IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

UNITED STATES OF AMERICA                    PLAINTIFF/RESPONDENT

VS.                 Criminal No. 2:15-cr-20003-PKH-MEF-1
                    Civil No. 2:17-cv-02068-PKH-MEF

DONALD WAYNE LAMOUREAUX               DEFENDANT/PETITIONER

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is the Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or

Correct Sentence by a Person in Federal Custody filed on April 26, 2017.  (ECF No. 59).  The

Government filed its response on May 25, 2017.  (ECF No. 62).  Petitioner filed a reply to the

Government's response on June 19, 2017 (ECF No. 63), and he filed an affidavit to supplement his

reply on September 18, 2017 (ECF No. 64).  An evidentiary hearing was held on January 29, 2018.

The matter is ready for report and recommendation.

### I. Background

On February 5, 2015, a Criminal Complaint was filed against Defendant/Petitioner, Donald

Wayne Lamoureaux ("Lamoureaux"), alleging that on or about February 3, 2015, in the Western

District of Arkansas, Lamoureaux engaged in an online conversation with an undercover officer in

which Lamoureaux made arrangements to travel out of state for purposes of having sexual relations

with a minor, in violation 18 U.S.C. 2422(a).  (ECF No. 1).  Lamoureaux was arrested on February

6, 2015 (ECF No. 8), and he made his initial appearance on February 9, 2015 (ECF No. 4).  James

B. Pierce ("Pierce"), an Assistant Federal Public Defender, was appointed to represent Lamoureaux.

(ECF No's. 4, 6).  Lamoureaux waived the issues of probable cause and detention, and he was

-1-

ordered detained and remanded to the custody of the United States Marshal's Service.  (ECF No's. 4, 7).

On February 20, 2015, an Entry of Appearance and Motion for Substitution of Counsel was filed by Rex W. Chronister ("Chronister") and Ronald G. Fields ("Fields") who advised they had been retained to represent Lamoureaux.  (ECF No. 9).  The Motion for Substitution of Counsel was granted by Text Only Order entered on February 20, 2015.

On February 25, 2015, Lamoureaux was named in an Indictment charging him with one count of using a facility of interstate commerce to entice a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b) (Count One), and one count of attempted coercion or enticement, in violation of 18 U.S.C. § 2422(a) (Count Two).  (ECF No. 11).  Lamoureaux appeared with his retained counsel for arraignment on March 4, 2015, at which time Lamoureaux entered a not guilty plea to the Indictment.  (ECF No. 16).

On April 15, 2015, Lamoureaux was named in a Superseding Indictment charging him with one count of using a facility of interstate commerce to entice a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b) (Count One), and one count of attempted coercion or enticement, in violation of 18 U.S.C. § 2422(a) (Count Two).  (ECF No. 19).  Lamoureaux appeared with his retained counsel for arraignment on April 24, 2015, at which time Lamoureaux entered a not guilty plea to the Superseding Indictment.  (ECF No. 23).  Lamoureaux requested a detention hearing, and the detention hearing was held on May 7, 2015.  (ECF No. 25).  Lamoureaux was ordered detained and remanded to the custody of the United States Marshal's Service.  (ECF No. 26).

On May 18, 2015, Lamoureaux filed a Motion to Dismiss Count One of Indictment.  (ECF No. 27).  In it, Lamoureaux argued that 18 U.S.C. § 2422(b) is "unambiguously directed at the

persuasion, inducement, enticement or coercion of a minor for sexual activity, and the use of a means of interstate commerce to do so," but that "[t]he statute does not criminalize the use of such a means to attempt to induce, persuade, entice, or coerce an *adult* to cause a minor to engage in sexual activity." (ECF No. 27, p. 2). The motion was denied by Order (ECF No. 30) entered on May 28, 2015.

On June 30, 2015, Lamoureaux appeared with counsel before the Hon. P. K. Holmes, III, Chief U. S. District Judge, for a change of plea hearing. (ECF No. 31). A written Plea Agreement (ECF No. 32) was presented to the Court, and Lamoureaux conditionally pleaded guilty to Count One of the Superseding Indictment charging him with coercion and enticement of a minor, in violation of 18 U.S.C. § 2422(b). (ECF No's. 31, 32). The Court accepted the conditional guilty plea and ordered a presentence investigation. (ECF No. 31).

An initial Presentence Investigation Report ("PSR") was prepared by the United States Probation Office on September 2, 2015. (ECF No. 35). On September 14, 2015, the Government advised that it had no objections to the initial PSR. (ECF No. 37). On September 21, 2015, Lamoureaux advised that he had three objections to the initial PSR: he denied the allegations reported in paragraph 28; he noted that in addition to his other health conditions reported in paragraph 65, he also has Non-Hodgkin's Lymphoma with chemotherapy which resulted in dilated cardiomyopathy (underlying cause of atrial fibrillation) and increased risk of blood clot or stroke; and, that factors related to the offense and offender warrant consideration of a sentence below the applicable Guidelines range. (ECF No. 38).

On September 23, 2015, a final PSR was submitted to the Court. (ECF No. 39). The Probation Officer addressed Lamoureaux's objections in an Addendum to the PSR. (ECF No. 39-1).

The Probation Officer believed the content of paragraph 28 was correct as it was derived from investigative material, but he included Lamoureaux's contention to the allegations by reference, and it was noted that paragraph 28 had no impact on the Guidelines calculation. (ECF No. 39-1, p. 1). Paragraph 65 was revised at Lamoureaux's request. (*Id*.). No changes were made to the final PSR in regard to Lamoureaux's third objection, the Probation Officer noting that the objection was an argument for a downward variance that the Court should consider at the time of sentencing. (*Id*.).

The final PSR determined that Lamoureaux's conduct called for a base offense level of 28. (ECF No. 39, ¶ 34). A two-level enhancement was applied pursuant to U.S.S.G. § 2G1.3(b)(3)(A) because the offense involved use of a computer or an interactive computer service to persuade, induce, entice, coerce, or facilitate the travel of the minor to engage in the prohibited sexual conduct. (ECF No. 39, ¶ 35). Pursuant to U.S.S.G. § 2G1.3(b)(5), an eight-level increase was reported because § 2G1.3(a)(3) applied and the offense involved a minor who had not attained the age of 12 years. (ECF No. 39, ¶ 36). After a three-level reduction for acceptance of responsibility, Lamoureaux's total offense level was determined to be 35. (ECF No. 39, ¶¶ 42-44).

Lamoureaux's had no criminal history, placing him in criminal history category I. (ECF No. 39, ¶ 53). The statutory minimum term of imprisonment is 10 years and the statutory maximum term of imprisonment is life. (ECF No. 39, ¶ 84). Based upon a total offense level of 35 and a criminal history category of I, Lamoureaux's advisory Guidelines range was determined to be 168 to 210 months imprisonment. (ECF No. 39, ¶ 85).

Lamoureaux filed a Sentencing memorandum on November 9, 2015 in which he argued that several factors, including his 15-year military service, his service as a physician for the U. S. Department of Veterans Affairs, his age (69), and health conditions, supported a downward variance

to a sentence of 120 months imprisonment. (ECF No. 42).

Lamoureaux appeared for sentencing on November 19, 2015. (ECF No. 44). The Court imposed a sentence of 180 months imprisonment, 10 years supervised release, no fine, and a $100.00 special assessment. (*Id*.). Judgment was entered by the Court on November 20, 2015. (ECF No. 46).

Lamoureaux pursued a direct appeal to the Eighth Circuit Court of Appeals. (ECF No. 48). Pursuant to his conditional plea of guilty, Lamoureaux argued on appeal that the District Court erred in denying his motion to dismiss Count One of the Indictment. Finding that the facts alleged in the Superseding Indictment were sufficient to charge Lamoureaux with attempt to violate 18 U.S.C. § 2422(b) because enticement of a minor can be attempted through an intermediary adult, the Eighth Circuit affirmed Lamoureaux's conviction. (ECF No. 57-2); *United States v. Lamoureaux*, 669 F. App'x 810 (8th Cir. 2016) (unpublished).

On April 26, 2017, Lamoureaux filed his Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (the "motion"). (ECF No. 59). The motion raises three grounds for relief: (1) ineffective assistance of counsel due to trial counsel's failure to investigate the case and to "advance the primary defense of Public Authority" (ECF No. 59-1, pp. 1-2); (2) that the conditional guilty plea was not voluntarily and intelligently entered because the trial court "erred by not engaging the defendant in developing a factual basis for a guilty plea," specifically on the element of intent (ECF No. 59-1, p. 2); and, (3) ineffective assistance of counsel due to appellate counsel's failure to raise the issue of lack of intent on appeal (*Id*.).

The United States' response in opposition to the motion was filed on May 25, 2017. (ECF No. 62). Lamoureaux filed a reply on June 19, 2017 (ECF No. 63), and he supplemented his reply

with an affidavit filed on September 18, 2017 (ECF No. 64).

The undersigned held an evidentiary hearing on January 29, 2018. (ECF No. 70). Lamoureaux appeared in person and testified on his own behalf. Two witnesses appeared and testified for the Government: Rex W. Chronister and Ronald G. Fields (Lamoureaux's trial counsel).

## II.  Discussion

"A prisoner in custody under sentence . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). "If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). A thorough review of Lamoureaux's motion, the files and records of this case, and the evidence presented at the evidentiary hearing, conclusively shows that Lamoureaux is not entitled to relief, and the undersigned recommends the denial and dismissal of Lamoureaux's § 2255 motion with prejudice.

### A.  Legal Standard for Ineffective Assistance of Counsel Claims

To prove a claim of ineffective assistance of counsel, a criminal defendant must demonstrate both that counsel's performance was deficient, and that counsel's deficient performance prejudiced

the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the deficient performance prong of the *Strickland* test, one must show that counsel's representation fell below the "range of competence demanded of attorneys in criminal cases." *Id*. at 688. Review of counsel's performance is highly deferential, and there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 689. Moreover, "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland*, 466 U.S. at 690). Courts also "do not use hindsight to question counsel's performance," but instead must analyze it according to counsel's situation at the time of the allegedly incompetent act or omission. *Kenley v. Armontrout*, 937 F.2d 1298, 1303 (8th Cir. 1991). If one fails to establish deficient performance by counsel, the court need proceed no further in its analysis of an ineffective assistance of counsel claim. *United States v. Walker*, 324 F.3d 1032, 1040 (8th Cir. 2003).

To establish the prejudice prong of the *Strickland* test, one must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. The United States Supreme Court has clarified that the proper prejudice analysis is whether "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993) (quoting *Strickland*, 466 U.S. at 687).

### B. Failure to Investigate and Advance Public Authority Defense

Lamoureaux's first ground for relief is his claim of ineffective assistance of counsel due to the failure to investigate the case and advance his defense of "public authority."

Lamoureaux visited an internet chatroom, "Older for Younger," and engaged in a

conversation with a woman[1] who reportedly wanted a man to "teach" her four year old daughter about sex. (ECF No. 59-1, p. 1). Lamoureaux, a medical doctor, alleges that he is a mandated reporter under Arkansas law and is required to report suspected child abuse to authorities; however, "such a report would not be accepted without the child's identifying information," and "Lamoureaux's sole intent was to procure this information, while gathering evidence for a subsequent prosecution of this person." (*Id.*). Lamoureaux alleges that he informed his retained counsel of his intent "to investigate and ultimately report the suspected activity" during his initial meeting with them, and that he maintained his innocence throughout the judicial process. (*Id.*). He asserts that his counsel "failed to investigate [his] case, did not ask for possible witnesses or evidence for trial preparation, nor did they file a required motion for an affirmative defense." (*Id.*). He states he had three witnesses, all nurses who observed his interactions with patients on a daily basis, who would have bolstered his case if called to testify. (ECF No. 59-1, pp. 1-2). Finally, he claims he was prejudiced when counsel failed to advance his primary defense of "public authority." (ECF No. 59-1, p. 2).

The Government contends that under *Tollett v. Henderson*, 411 U.S. 258 (1973) and its progeny a defendant who voluntarily enters a plea of guilty is precluded from later obtaining collateral review of antecedent non-jurisdictional defects, and that a guilty plea "simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of

---

[1] The woman was actually a police officer conducting an undercover online investigation directed at individuals who use the internet to target minors for purposes of engaging in illegal sexual activity. (ECF No. 1, p. 3). Throughout this report and recommendation, the woman, or purported mother, shall be referred to as "UCO."

factual guilt, if factual guilt is validly established."[2]  (ECF No. 62, p. 11).  As such, the Government argues that Lamoureaux's claim regarding a failure to pursue certain defenses prior to trial were waived by his guilty plea.  (*Id*.).

"'Public authority' has been described as an affirmative defense where the defendant seeks exoneration based on the fact that he reasonably relied on the authority of a government official to engage him in covert activity."  *United States v. Achter*, 52 F.3d 753, 755 (8th Cir. 1995) (citing *United States v. Baptista-Rodriguez*, 17 F.3d 1354, 1368 n. 18 (11th Cir. 1994)).  The defense is based on the premise that "actions properly sanctioned by the government are not illegal," and, therefore, a defendant may legitimately rely on a government official's authority to authorize the defendant's conduct.  *See United States v. Light*, 64 F.3d 660 (4th Cir. 1995).  The Eighth Circuit noted in *Achter* that other circuits have held that the validity of this defense depends upon whether the government agent in fact had the authority to empower the defendant to perform the acts in question[3], and that the defense requires a defendant to establish that he reasonably relied on the representations of a government official.  *Achter*, 52 F.3d at 755.  While the public authority defense requires a defendant to show that he was engaged by a government official to participate in covert activity, the defendant does not have to testify or even offer any evidence:

> "[T]he basis for the defendant's theory may derive from the testimony of government witnesses on direct or cross-examination.  Finally, the evidence to support a theory of defense need not by overwhelming; a defendant is entitled to an instruction on a theory of defense even though the evidentiary basis for the theory is weak, inconsistent, or of

---

[2] Citing *Menna v. New York*, 423 U.S. 61, 62-63 n. 2 (1975).

[3] Citing *Baptista-Rodriguez*, *supra*, and *United States v. Rosenthal*, 793 F.2d 1214, 1236 (11th Cir. 1986), *modified on other grounds*, 801 F.2d 378 (11th Cir. 1986), *cert. denied*, 480 U.S. 919 (1987).

doubtful credibility."

*United States v. Scout*, 112 F.3d 955, 960 (8th Cir. 1997) (internal quotations and alterations omitted).

A "close cousin of the public authority defense is the defense of 'entrapment by estoppel.'" *See United States v. Baker*, 438 F.3d 749, 753 (7th Cir. 2006) (discussing the similarity of the two defenses). Entrapment by estoppel "has been held to apply when an official assures a defendant that certain conduct is legal, and the defendant reasonably relies on that advice and continues or initiates the conduct." *Achter*, 52 F.3d at 755.

"Finally, a defendant may assert a defense of 'innocent intent.'" *Baptista-Rodriguez*, 17 F.3d at 1368 n. 18. This theory is not an affirmative defense at all, but a negation of the *mens rea* element of the crime. *Id*. "In effect, the defendant testifies that he lacked criminal intent because he thought he was acting in cooperation with the government." *Id*.

Here, it is undisputed that Lamoureaux was never engaged by a government official to participate in any covert activity. In *United States v. Parker*, 267 F.3d 839, 844 (8th Cir. 2001), the Eighth Circuit found that the defendant was not entitled to a public authority jury instruction because there was no evidence that he acted on the request or advice of a duly authorized law enforcement official and, to the contrary, the evidence showed that he acted on his own. Such are the circumstances with Lamoureaux. No duly authorized law enforcement official requested or advised Lamoureaux to engage in the conduct leading to his arrest and prosecution, nor did any government official assure him at any point that his conduct was legal.

Regarding their investigation of the case, Chronister and Fields testified they conferred with Lamoureaux about the existence of any fact witnesses or other physical evidence, that would

corroborate his alleged plan to report the "mother's" conduct to the police once he obtained sufficient identifying information.  Lamoureaux admitted his attorneys asked him for such information, and he told them there were no fact witnesses or any other evidence that would serve that purpose.  This is because Lamoureaux never told anyone about his alleged sting plans, nor did he document any of his efforts (aside from engaging in the online conversations).  Lamoureaux testified at hearing that he did no legal research regarding his plan, he did not consult with any attorney for advice, nor did he did not consult with anyone in law enforcement about his alleged sting plans after the initial internet chat room conversation with the UCO.  These undisputed facts confirm that Lamoureaux was acting on his own.

Lamoureaux testified at the evidentiary hearing that he had insufficient identifying information to make a report of suspected child abuse.  He introduced copies of certain sections of the Arkansas Child Maltreatment Act, A.C.A. § 12-18-101 *et seq.* (2016 Repl.) (Defendant's Exhibit 3); the Arkansas Good Samaritan law, A.C.A. § 17-95-101 (2010 Repl.) (Defendant's Exhibit 4); and, certain sections of the Code of Federal Regulations related to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") (Defendant's Exhibits 5-8).  While A.C.A. § 12-18-303(a)(2) does require "sufficient identifying information" to be provided "to identify and locate the child or the child's family," the term "sufficient identifying information" is not defined in the Act.  *See* A.C.A. § 12-18-103 (2016 Repl.).  Lamoureaux did have a Yahoo Messenger username for the UCO, since he made contact with the UCO to conduct private conversations on Yahoo Messenger.  (ECF No. 1, p. 3).  Lamoureaux also obtained bank information from the UCO in connection with his request that the UCO set up a bank account so he could deposit money for expenses associated with the hotel, sex toys, and gas money.  (ECF No. 1, p. 4).  With only his username and limited

information, law enforcement was able to identify Lamoureaux using an open source internet search (Google Search) (ECF No. 1, p. 3); so, it stands to reason that law enforcement could have obtained identifying and location information about the "mother" if Lamoureaux had made a report to the Child Abuse Hotline.

Lamoureaux's reliance on the Arkansas Good Samaritan law is similarly misplaced. Lamoureaux testified at the evidentiary hearing that because of the Good Samaritan law he did not believe he could stop his "investigation." According to Lamoureaux, once he embarked on the "investigation," he could not abandon it without facing potential liability. The Good Samaritan law protects health care professionals by limiting the exposure to civil liability for those who act in good faith to provide emergency care or assistance "at the place of an emergency or accident." A.C.A. § 17-95-101(a) (2010 Repl.). There was no emergency or accident scene involved in the present case. Moreover, Lamoureaux admitted that he did not even learn about the Good Samaritan law until after he was transported to the Bureau of Prisons ("BOP"), so it plainly could not have been the basis for his decision to continue on with his "investigation."

Lamoureaux also points to HIPAA as preventing him from making any report of the suspected child abuse. The Court notes, however, that no patient - physician relationship existed between the UCO, the UCO's "child," and Lamoureaux, and HIPAA actually *permits* disclosure to "a public health authority or other appropriate government authority authorized by law to receive reports of child abuse or neglect." *See* 45 C.F.R. § 164.512(b)(1)(ii). HIPAA does not excuse Lamoureaux's failure to report the suspected child abuse.

The Court also considers the testimony of both Chronister and Fields that persons accused of enticement of a minor frequently assert the public authority defense. Chronister testified it is the

most common defense in such prosecutions, and they searched for a way to differentiate Lamoureaux from others who had unsuccessfully asserted the defense. With no fact witnesses or other evidence to corroborate Lamoureaux's defense, Chronister felt there was simply no way to advance the defense without having Lamoureaux "carry the water" and testify at trial. When he was informed that Lamoureaux suffered from performance anxiety or "stage fright,"[4] Chronister testified that "we would have zero evidence" to present in support of the public authority defense.

Fields, who has exclusively practiced criminal law since 1975, testified that in his experience virtually all defendants accused of enticement of a minor initially claim they were acting to set someone else up in a sting operation. Fields acknowledged that Lamoureaux had some positive intangible qualities that other defendants may lack, i.e., he was well educated, and since Lamoureaux was a physician he belonged to a profession that most potential jurors would consider trustworthy. Fields testified that the public authority defense would have to be proven at trial, and since there were no other fact witnesses or other evidence, Lamoureaux would have to testify to support the defense. Fields stated he was prepared to present the defense at trial, that nothing was lacking in his preparations for trial, and that when Lamoureaux told him emphatically that he could not testify at trial due to his stage fright, "it was like cold water was thrown in my face." At that point, and since Lamoureaux never challenged the operative facts, both counsel testified that the focus became obtaining the best possible plea agreement for Lamoureaux.

Without an ability to present any evidence in support of the public authority or entrapment

---

[4] In his reply, Lamoureaux admitted that his stage fright "would severely impact [his] performance at trial"; that "his attorneys were able to witness this situation firsthand during several status meetings"; and, that "it was also manifested in his court appearances," during which Lamoureaux "only responded with short, non-narrative responses to foreclose potential open[-]ended discussions." (ECF No. 63, p. 3).

by estoppel defenses, and considering his stage fright, Lamoureaux testified at the evidentiary hearing that he felt he was doing the right thing by pleading guilty. This belief is also reflected in his reply, where Lamoureaux states, "[w]ith this revelation [i.e., the stage fright], consideration was given to a guilty plea." (ECF No. 63, p. 3).

Other strategic reasons for pursuing a conditional guilty plea also existed. During one of Lamoureaux's online conversations with the UCO, he told the UCO about a prior sexual relationship with a female child that began when the child was around 10-years of age and lasted for about nine years. (ECF No. 39, ¶ 24). Over the course of the investigation, agents learned that the female Lamoureaux had referred to was possibly the now-deceased daughter of Lamoureaux's long-time girlfriend. (ECF No. 39, ¶ 28). Lamoureaux was also investigated in 2007 by the Arkansas State Police for possession of child pornography. (ECF No. 39, ¶ 54). One of the files located on Lamoureaux's computer was named "teenage girl gets raped in carport." (*Id*.). Lamoureaux denied that child pornography interested him, and the U. S. Attorney for the Eastern District of Arkansas declined to pursue criminal charges because the ages of the subjects in two videos located on Lamoureaux's laptop computer could not be determined. (*Id*.). As Fields testified, there was concern that use of character witnesses at trial would open the door to evidence of these prior incidents.

Considering the evidence of record, the defenses of public authority and entrapment by estoppel are just not applicable to Lamoureaux's case. Counsel did carefully consider these defenses, as well as simply attempting to negate criminal intent at trial, and they pursued an investigation of any facts to support these defenses; but, since Lamoureaux never told anyone about his alleged sting "investigation," there were no fact witnesses or other evidence to support these

defenses. Counsel cannot be faulted for that. Then, when Lamoureaux emphatically told his counsel that he could not testify at trial due to his stage fright, there was, as Chronister commented, "zero evidence" to present in support of these defenses. Failure of counsel to advance inapplicable or unprovable defenses does not constitute deficient performance by counsel. *See Thomas v. United States*, 951 F.2d 902 (8th Cir. 1991) (defendant's attorney was not ineffective for failing to raise a claim lacking merit); *Larson v. United States*, 905 F.2d 218, 219 (8th Cir. 1990) (it cannot be ineffective assistance not to raise a meritless argument); *United States v. Johnson*, 707 F.2d 317, 323 (8th Cir. 1983) (an attorney will not be held negligent for failure to make a non-meritorious motion).

Since Lamoureaux has failed to show that his counsels' performance was deficient regarding this issue, there is no need to address the second *Strickland* prong of prejudice. *Walker*, 324 F.3d at 1040 (if a movant fails to show deficient performance by counsel, the court need proceed no further in its analysis of an "ineffective assistance" claim).

### C. Conditional Guilty Plea Was Knowingly, Voluntarily and Intelligently Entered

Lamoureaux next claims that his guilty plea was not voluntarily and intelligently entered. He asserts the Court erred "by not engaging the defendant in developing a factual basis for a guilty plea." (ECF No. 59-1, p. 2) Lamoureaux's claim finds no support in the record, as the issue of intent was addressed in the Indictment and Superseding Indictment, in the written Plea Agreement, and during the change of plea hearing. Lamoureaux's conditional guilty plea was knowingly, voluntarily, and intelligently entered.

When a guilty plea is entered by the movant, the focus of a collateral attack must remain limited to the nature of counsel's advice and the voluntariness of the guilty plea. *Bass v. United States*, 739 F.2d 405, 406 (8th Cir. 1984), citing *Tollett v. Henderson*, 411 U.S. 258, 266 (1973).

As the Court in *Tollett* eloquently observed:

> ". . . a guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  *He may only attack the voluntary and intelligent character of the guilty plea* by showing that the advise he received from counsel was not within the standards set forth in *McMann*[5].
>
> A guilty plea, voluntarily and intelligently entered, may not be vacated because the defendant was not advised of every conceivable constitutional plea in abatement he might have to the charge . . . And just as it is not sufficient for the criminal defendant seeking to set aside such a plea to show that his counsel in retrospect may not have correctly appraised the constitutional significance of certain historical facts, (internal citation omitted) it is likewise not sufficient that he show that if counsel had pursued a certain factual inquiry such a pursuit would have uncovered a possible constitutional infirmity in the proceedings."  *Id*. at 267 (emphasis added).

The rationale and ruling of *Tollett*, while a decision concerning a state prisoner's habeas claims, has been adopted by the Eighth Circuit for application to motions made by federal prisoners under 28 U.S.C. § 2255.  *See Bass*, 739 F.2d at 406.

The standard for determining the validity of a guilty plea remains whether it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970), citing *Boykin v. Alabama*, 395 U.S. 238, 242 (1969), *Machibroda v. United States*, 368 U.S. 487, 493 (1962), and *Kercheval v. United States*, 274 U.S. 220, 223 (1927).  "While a guilty plea taken in open court is not invulnerable to collateral attack

---

[5] *McMann v. Richardson*, 397 U.S. 759, 771 (1970) (If a prisoner pleads guilty on the advice of counsel, he must demonstrate that the advice was not "within the range of competence demanded of attorneys in criminal cases.")

in a post conviction proceeding, the defendant's representations during the plea-taking carry a strong presumption of verity and pose a 'formidable barrier in any subsequent collateral proceedings.'" *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997) (quoting *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985)). A defendant has a heavy burden to overcome those admissions and show that his guilty plea was involuntary. *See Blackledge v. Allison*, 431 U.S. 63, 72-74 (1977).

Here, the Indictment (ECF No. 11) alleges in Count One that Lamoureaux, using a facility and means of interstate commerce, *knowingly* attempted to persuade, induce, entice, and coerce an individual he believed was four years of age to engage in any sexual activity for which any person can be charged with a criminal offense, namely A.C.A. § 5-14-125 (sexual assault in the second degree), all in violation of 18 U.S.C. § 2422(b). The language in the Indictment tracks the statutory language set forth in 18 U.S.C. § 2422(b). Among the various ways to commit the underlying Arkansas offense of sexual assault in the second degree is for a person "[b]eing eighteen (18) years of age or older, engages in sexual contact with another person who is less than fourteen (14) years of age and not the person's spouse." A.C.A. § 5-14-125(3) (2013 Repl.).

Similar allegations are made in Count One of the Superseding Indictment. (ECF No. 19). Both the original Indictment and Superseding Indictment contained an allegation that Lamoureaux *knowingly* attempted to entice a minor to engage in any sexual activity for which a person can be charged with a criminal offense. Under Arkansas law, "[a] person acts knowingly with respect to: (A) the person's conduct or the attendant circumstances when he or she is aware that his or her conduct is of that nature or that the attendant circumstances exist; or, (B) a result of the person's conduct when he or she is aware that it is practically certain that his or her conduct will cause the result." A.C.A. § 5-2-202 (2013 Repl.) To act knowingly establishes the requisite culpable mental

-17-

state to violate 18 U.S.C. § 2422(b).

In order to convict one accused of attempted coercion and enticement of a minor to engage in sexual activity for which any person could be charged with a criminal offense, the Government has only to prove that if the sexual activity the accused attempted to entice the minor to engage in had taken place, the accused could have been charged with a crime. *See United States v. Hite*, 950 F.Supp.2d 23 (D.D.C. 2013). Convictions for attempting to entice a minor to engage in illegal sexual activity, attempting to transfer obscene material to someone under the age of 16, and attempting to travel in interstate commerce for the purpose of engaging in illicit sexual conduct do not require proof that the intended victim is an actual minor, as long as the defendant *believes* that the victim is a minor. *United States v. Spurlock*, 495 F.3d 1011 (8th Cir. 2007), *cert. denied* 552 U.S. 1054.

In his written Plea Agreement, Lamoureaux admitted to the factual basis in support of his conditional guilty plea. (ECF No. 32, ¶ 3(a-g)). In his discussions with the UCO, Lamoureaux agreed to meet the UCO at a motel in West Plains, Missouri, and Lamoureaux admitted "this meeting was *for the purpose of* bathing the child, digitally penetrating the child, and engaging in oral sex with the child." (ECF No. 39, ¶ 3(e)) (emphasis added). That intended sexual contact would constitute sexual assault in the second degree in violation of A.C.A. § 5-4-125(3) (2013 Repl.). Lamoureaux also admitted that: "[b]ased on the content of the messages exchanged between Lamoureaux and the UCO, based on the defendant's deposit of $300 into the bank account set up by the UCO, based on the adult pornography sent to the UCO for purposes of sexually grooming the minor, and based on the fact Lamoureaux set up a meeting in West Plains, Missouri, *for the purposes of sexually assaulting what he believed was a minor*, the government could prove that the defendant

-18-

in this case coerced and enticed a minor in violation of Title 18, United States Code, Sections 2422(b)." (ECF No. 39, ¶ 3(g)) (emphasis added).

Lamoureaux was represented by experienced retained counsel throughout the case. Prior to the change of plea hearing, Messrs. Chronister and Fields had represented Lamoureaux at his arraignments on the Indictment and Superseding Indictment, and at a detention hearing they requested. (ECF No's. 16, 23, 25). Defense counsel prepared and filed a motion to dismiss Count One of the Superseding Indictment. (ECF No. 27). Upon receiving the Court's Order denying the motion to dismiss (ECF No. 30), counsel negotiated a conditional plea agreement with the Assistant United States Attorney prosecuting the case, and they carefully reviewed the written Plea Agreement with Lamoureaux before obtaining his signature on it. (ECF No. 32, ¶ 31).

The written Plea Agreement informed Lamoureaux of the count of conviction (charging him with coercion and enticement of a minor in violation of 18 U.S.C. § 2422(b)). (ECF No. 32, ¶ 1). It informed Lamoureaux of the conditional nature of his guilty plea. (ECF No. 32, ¶ 2). Lamoureaux acknowledged that he had fully discussed with his counsel the facts of the case and the elements of the crime to which he was pleading guilty, and he admitted the factual basis for the guilty plea. (ECF No. 32, ¶ 3). The Plea Agreement advised Lamoureaux of his constitutional and statutory rights, including the right to persist in his plea of not guilty. (ECF No. 32, ¶ 4). By signing the Plea Agreement, Lamoureaux admitted that he had read the agreement and carefully reviewed every part of it with his defense counsel; that he fully understood the agreement; that no promises, agreements, understandings, or conditions were made or entered into in connection with his decision to plead guilty except those set forth in the Plea Agreement; that he was satisfied with the legal services provided by defense counsel in connection with the Plea Agreement and matters related to it; and,

that he entered into the Plea Agreement freely, voluntarily, and without reservation, and that his desire to enter a plea of guilty was not the result of any threats or coercion. (ECF No. 32, ¶ 30).

During the change of plea hearing on June 30, 2015, Lamoureaux was sworn on oath and examined about the offense; the Court inquired of Lamoureaux about his age and level of education; and, inquiry was made as to whether Lamoureaux was under the influence of alcohol or drugs. (ECF No. 53, p. 3). When asked if he understood the nature of the proceedings, Lamoureaux responded that he did, and he confirmed that he had discussed his case and the charges brought against him with his counsel. (ECF No. 53, p. 4). Inquiry was made as to whether Lamoureaux was fully satisfied with his counsel, and he stated that he was. (*Id*.). Lamoureaux expressed his wish to plead guilty to Count One of the Superseding Indictment. He stated that the written Plea Agreement had been explained to him, and that he had an opportunity to read it and discuss it with his counsel before signing it. (ECF No. 53, pp. 4-5). He confirmed that the Plea Agreement contained his full understanding of the agreement that had been negotiated with the Government, and that he understood the agreement. (ECF No. 53, p. 5). Lamoureaux informed the Court that nobody made any type of promises or assurances to him of any kind to get him to sign the agreement other than what is in the agreement itself, and that nobody had attempted to force him in any way to plead guilty. (ECF No. 53, pp. 5-6).

The possible severity of sentence was explained, including forfeiture of certain personal property and the requirement to register as a sex offender. (ECF No. 53, pp. 6-7). The Court explained the sentencing process, including application of the advisory Sentencing Guidelines, and Lamoureaux told the Court he understood. (ECF No. 53, pp. 7-8). Lamoureaux's constitutional and statutory rights were reviewed, including his right to persist in his plea of not guilty and to proceed

to a jury trial, and Lamoureaux expressed understanding that by entering a guilty plea there would be no trial and he will have waived all of his other constitutional rights except the right to counsel. (ECF No. 53, pp. 8-9). The conditional nature of the guilty plea was explained, and Lamoureaux stated that he understood. (ECF No. 53, p. 10). The Court also explained to Lamoureaux that after his guilty plea is entered and accepted by the Court, that aside from the conditional aspect of the plea, he would not otherwise have the right to withdraw his guilty plea prior to sentencing unless he could show a fair and just reason for the withdrawal. Lamoureaux stated that he understood. (*Id.*).

Critical to Lamoureaux's claim in this § 2255 proceeding, the Court during the change of plea hearing set forth the essential elements of the offense to which Lamoureaux was to plead guilty, and Judge Holmes explained to Lamoureaux:

> "Now, and this is set forth in the Court's ruling[6], it's not necessary for the government to prove that the intended victim was actually persuaded, induced, enticed or coerced into making sexual contact with you, but it is necessary for the government to prove *that you intended to engage in some form of unlawful sexual activity* with the individual, and knowingly and wilfully took some action that was a substantial step toward bring about or engaging in sexual contact with the intended victim." (ECF No. 53, p. 11) (emphasis added).

At the Court's request, AUSA Dustin Roberts provided a statement regarding the factual basis to support Lamoureaux's guilty plea. (ECF No. 53, pp. 11-13). The stated facts track those set forth and admitted by Lamoureaux in the written Plea Agreement. (ECF No. 32, ¶ 3). Among the stated facts are that during online conversations Lamoureaux expressed that he would like to meet the UCO and her four-year old daughter *for sexual purposes*, and that he expressed in many conversations that he wanted to teach the four-year old minor how to have sex. (ECF No. 53, p. 12).

---

[6] Referring to the Court's Order (ECF No. 30) denying Lamoureaux's Motion to Dismiss Count One of Indictment (ECF No. 27).

When asked if the Government could prove the stated factual basis if the case went to trial, Lamoureaux admitted that the Government could do so.  (ECF No. 53, pp. 13-14).  Mr. Chronister also stated his belief that the Government could prove all of the essential elements of the offense beyond a reasonable doubt.  (ECF No. 53, p. 14).  Lamoureaux then pleaded guilty to the offense charged in Count One of the Superseding Indictment.  (*Id*.).  Upon such inquiry in open court, the Court determined that Lamoureaux was fully competent and capable of entering an informed plea; that he was aware of the nature of the charge and the consequences of his guilty plea; that the guilty plea was a knowing and voluntary plea supported by an independent basis in fact containing all of the essential elements of the offense to which Lamoureaux pleaded guilty; and, the Court accepted the guilty plea and adjudged Lamoureaux guilty of the offense.  (*Id*.).

Contrary to Lamoureaux's argument, the Court did address the issue of Lamoureaux's criminal intent during the change of plea hearing, and Lamoureaux knowingly, voluntarily and intelligently admitted to the factual basis establishing all of the essential elements of the offense to which he pleaded guilty.

Lamoureaux faults the Court for making "no attempt to elicit narratives which would serve to explore the defendant's understanding of the elements of the crime, specifically the element of intent ..." (ECF No. 59-1, pp. 22-23).  Lamoureaux suggests that if the Court would have asked him "why did you do this?", he would have had the opportunity to express his innocent intent.  (ECF No. 59-1, p. 24).  Of course, Lamoureaux has also inconsistently alleged that his stage fright was "manifested in his court appearances, where a review of the record shows that defendant only responded with short, non-narrative responses to foreclose potential open ended discussions." (ECF No. 63, p. 3).  Such allegation indicates that it was Lamoureaux, not the Court, who controlled the

-22-

nature of his responses.

In any event, the Court clearly complied with the requirements of Rule 11 of the Federal Rules of Criminal Procedure. All of the matters required to be addressed by Rule 11(b)(1) were addressed by the Court during the change of plea hearing, and the Court ensured that Lamoureaux's conditional guilty plea was voluntary as required by Rule 11(b)(2), and that there was a factual basis for the plea as required by Rule 11(b)(3). The Court was not, as Lamoureaux contends, obligated to ask questions seeking narrative, open-ended responses. *See, e.g., United States v. Goodson*, 569 F.3d 379, 382 (8th Cir. 2009) (guilty plea was knowing and voluntary where defendant was fully advised of the maximum sentence he faced if the plea was accepted and the rights he would waive by pleading guilty; defendant answered "Nope" when asked if anyone forced him to plead guilty or made any promises to get him to plead guilty; and, defendant answered "Yeah" when asked if he was satisfied with the representation he received from his attorney). Just as in *Goodson*, Lamoureaux's "self-serving, post-plea claims ... fly directly in the face of his own plea hearing testimony." *Id.*, 569 F.3d at 383.

Lamoureaux was specifically informed of his right to persist in his not guilty plea and proceed to trial. He had the opportunity not to proceed with the conditional guilty plea and profess his innocent intent. He did not do so. Nor did Lamoureaux subsequently move to withdraw his guilty plea before or at sentencing.

Lamoureaux made a knowing and voluntary choice among the alternative courses open to him in entering his conditional guilty plea, and even at the evidentiary hearing he acknowledged on cross-examination that it was the right thing to do. His subsequent self-serving claim of innocent intent, despite steadfastly admitting to the truth of the underlying facts, affords him no relief.

### D.  Ineffective Assistance by Appellate Counsel

Following his conditional guilty plea, Lamoureaux appealed the denial of his motion to dismiss the indictment to the Eighth Circuit Court of Appeals.  The Eight Circuit affirmed this Court's denial of the motion to dismiss the indictment.  (ECF No. 57-2); *United States v. Lamoureaux*, 669 F. App'x 810 (8th Cir. 2016) (unpublished).  For his final ground for relief, Lamoureaux asserts ineffective assistance of his appellate counsel for failing to raise the issue of his innocent intent on appeal.  This claim also has no merit.

For the reasons discussed above, defense counsel's actions in negotiating a conditional guilty plea, and not pressing the public authority, entrapment by estoppel, and innocent intent defenses to jury trial were reasonable under the circumstances and did not constitute ineffective assistance of counsel.  For the same reasons that it was not ineffective assistance not to present those defenses to the trial court, it was not ineffective assistance not to present those arguments on appeal.  *See Thomas, supra* (defendant's attorney was not ineffective for failing to raise a claim lacking merit); *Larson, supra* (it cannot be ineffective assistance not to raise a meritless argument); *Johnson, supra* (an attorney will not be held negligent for failure to make a non-meritorious motion).

The Court also notes that the Eighth Circuit did specifically find that Lamoureaux "clearly demonstrated an intent to entice the apparent minor ..." (ECF No. 57-2, p. 3), so any alleged deficient performance for failing to raise the issue of innocent intent on appeal would appear to be non-prejudicial.

### E.  No Certificate of Appealability is Warranted

A Certificate of Appealability may issue under 28 U.S.C. § 2253 only if the applicant has made a substantial showing of the denial of a constitutional right.  A "substantial showing" is one

demonstrating that reasonable jurists could debate whether the petition should have been resolved in a different manner or the issues presented deserved further proceedings even though the petitioner did not prevail on the merits in the court considering his case at present. *Slack v. McDaniel*, 529 U.S. 473 (2000).

For the reasons discussed above, I conclude that Lamoureaux has not made a substantial showing of the denial of a constitutional right, and a Certificate of Appealability should be denied.

### III.  Conclusion

It is recommended that Lamoureaux's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (ECF No. 59), as supplemented, be **DISMISSED with PREJUDICE**.  It is further recommended that a request for a Certificate of Appealability be denied.

**The parties have fourteen (14) days from receipt of this Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely written objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 15th day of February 2018.

/s/ Mark E. Ford
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE